IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD P.,[1] | ) |
|       Plaintiff, | ) |
| v. | ) No. 20 C 2695 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) Magistrate Judge<br>) Maria Valdez |
|       Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Edward P.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 18] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On September 22, 2015, Plaintiff filed a claim for DIB, alleging disability since September 9, 2014. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing, the ALJ denied Plaintiff's claim for benefits. On April 5, 2019, as discussed further below, the Social Security Administration Appeals Council granted Plaintiff's request for review under the additional evidence provision of the Social Security Regulations.

A second hearing was held on August 16, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified. On September 12, 2019, the ALJ again denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's September 12, 2019 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 9. 2014. At

2

step two, the ALJ concluded that Plaintiff had the following severe impairments: status-post ischemic stroke with headaches; status-post right knee replacement; paroxysmal atrial fibrillation/atrial septal defect; emphysema; and lumbar degenerative disc disease. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal a Listing.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: can lift/carry 50 pounds occasionally and 25 pounds frequently; can push/pull as much as lift/carry; can sit for 6 hours, stand for 6 hours, and walk for 6 hours; can frequently operate foot controls with the right foot and frequently operate hand controls with the right hand; can frequently handle items with the right hand; can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can never work at unprotected heights; can occasionally work with moving mechanical parts; can occasionally operate a motor vehicle; can occasionally work in environments of humidity and wetness, and occasionally in vibration; and is able to perform simple, routine repetitive tasks with simple work-related decisions.

At step four, the ALJ concluded that Plaintiff would be unable to perform any past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

3

## DISCUSSION

### I.  ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

4

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) an updated medical evidence review was necessary in light of additional evidence; (2) the ALJ's RFC assessment was not supported by any medical opinions; and (3) the ALJ inadequately assessed credibility and Plaintiff's subjective symptoms.

Pertinent to Plaintiff's first argument, the Seventh Circuit has stated repeatedly that an ALJ may not "play[] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotations omitted). Consistent with that rule, "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citations omitted). With resect to Plaintiff's argument that an updated medical assessment was necessary in light of additional evidence, the issue comes down to whether new information "changed the picture" to an extent that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating herself the significance of the new medical information. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) ("An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the

7

picture so much' that it reasonably could have changed the reviewing physician's opinion.") (citation omitted).

In this case, following the ALJ's first decision denying benefits, the Appeals Council remanded the matter based on new and material evidence. In doing so, the Appeals Council stated as follows:

> The Appeals Council received additional evidence. This evidence is new, material, and relates to the period at issue. There is a reasonable probability that the additional evidence would change the outcome of the decision. The Appeals Council received reports from Pamela Cook, Psy.D., dated March 8, 2018, and September 17, 2018, with limitations that are more restrictive than those provided in her prior exam dated July 24, 2017. The March 8, 2018, report is based on testing from July 24, 2017 (Exhibit 15F). The reports indicate that the stated limitations relate back to the claimant's stroke in September 2015. Further consideration of this evidence is warranted.

(R. 221.) So, the Appeals Council determined that the referenced additional evidence "changed the picture" so much that the ALJ would need to render a new decision. Further, the Appeals Council believed that the additional evidence would likely change the outcome of the ALJ's decision. Nonetheless, the ALJ did not seek a new medical assessment by a state agency consultant.

Rather, it appears that the last review by state agency consultants occurred in May 2016. (*See* R. 92.) Since that time, substantial additional medical evidence has been amassed, including, but not limited to, the reports of Dr. Cook referenced by the Appeals Council. The ALJ took it upon herself to assess that medical evidence without the aid of medical experts. (*See, e.g., id.* at 84 ("While the undersigned notes vague reference to 'subcortical dementia, likely of the vascular type' by Dr. Cook in July 2017, this is not specifically diagnosed and there is no

8

indication for subsequent reference or diagnosis of same in the record."); *id.* at 87 ("[C]laimant was described as presenting with a slowed gait and unsteady balance upon standing during neuropsychological testing on July 24, 2017 . . . and a November 8, 2017 general clinic report references musculoskeletal review of systems positive for 'gait problem.'"); *id.* at 88-89 ("Dr. Cook concluded [in June 2016] that claimant's profile appeared to be consistent with a subcortical dementia, of the vascular type."); *id.* at 89 ("Upon examination [in January 2017], there was some asymmetry of his face, with narrowed palpebral fissure on the right side."); *id.* at 90 ("Noteworthy, related imaging just 4 months prior, a CT angiogram of head and neck on May 22, 2018, was normal without evidence for significant stenosis, aneurysm, or vascular malformation."); *id.* at 91 ("Regarding paroxysmal atrial fibrillation/atrial septic defect, a December 10, 2018 clinic report describes this as 'new onset' and claimant was started on Eliquis and metoprolol.").)

For his part, Plaintiff points to considerable evidence that came to light after the state agency consultants rendered their opinions: a June 2016 neuropsychological evaluation by Dr. Cook showing Plaintiff's Full Scale IQ is 76 and he has weakness in delayed verbal learning, delayed visual memory, semantic and verbal fluency, bilateral fine motor movements, attention, auditory and visual perception, shifting attention, and abstract concept formation (Pl.'s Reply at 2, citing R. 931-33); clinic notes from treating neurologist Dr. Daniel Orozco on January 9, 2017 demonstrating that Plaintiff has headaches and falls on the stairs at home (*id.* at 964); a May 9, 2017 clinic note by Dr. Orozco revealing residual

9

cognitive symptoms and trouble climbing stairs (*id.* at 966); a neuropsychological exam by Dr. Cook in July 2017 showing decline in verbal memory and bilateral fine motor movements (*id.* at 937-39); a normal CT angiogram in May 2018 demonstrating severe degenerative disc disease of the cervical spine (*id.* at 1004); testing by Dr. Cook in September 2018 revealing a significant decline in nonverbal reasoning (*id.* at 974-79); an ECG from December 2018 showing paroxysmal atrial fibrillation (*id.* at 983); and a July 8, 2019 neurological exam indicating Plaintiff had a wide-based gait, absent ankle clonus reflexes, and ataxia.[3]

Ultimately, the Court agrees with Plaintiff that substantial medical evidence post-dating the state agency consultants' assessments changed the picture to a degree that remand is necessary so an updated medical expert review can be undertaken. *See Stage*, 812 F.3d at 1125 ("Dr. Oni's evaluation contained significant, new, and potentially decisive findings – the need for a hip replacement and evidence of further spinal degeneration. They could reasonably change the reviewing physician's opinions. Instead of consulting a physician, though, the ALJ evaluated the MRIs and recommendation himself."); *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) ("Although a close question, we conclude that the ALJ erred by not soliciting an updated medical opinion interpreting Kemplen's July and September 2017 X-rays."); *Nichole M. S. v. Saul*, No. 19 C 7798, 2021 U.S. Dist. LEXIS 26993, at *41 (N.D. Ill. Feb. 12, 2021) ("In sum, the ALJ erred in relying on

---

[3] Defendant argues that only "raw medical evidence" and not opinion evidence may warrant an updated medical assessment. (Def.'s Memo at 4.) The Court finds that argument unavailing. As pointed out by Plaintiff in rebuttal, Plaintiff cites to considerable raw medical evidence in addition to opinion evidence.

10

outdated opinions of the state agency psychological consultants and on his own lay interpretation of the subsequent mental health records. A remand is required so the ALJ can reevaluate Nichole's mental RFC based upon opinion evidence from psychological experts who have considered the entire record.").

Though the ALJ here gave the opinions of the state agency consultants little weight, the Court concludes that the ALJ could not properly assess (or give or not give weight to) any opinions of state agency consultants that were not based on a review of the additional medical evidence discussed herein. The ALJ stated that "[t]here are no related treatment records in the file as of or prior to the State Agency opinions to support the level of restriction indicated." (R. 92.) That proves the point, as the state agency consultants in this case did not have the benefit of reviewing the additional medical evidence in forming their opinions. On remand, the ALJ may decide to give more weight to medical opinions formed based on a review of the entire record. *Cf. Carlota R.M. v. Saul*, No. 18-cv-2873, 2019 U.S. Dist. LEXIS 125626, at *23 (N.D. Ill. July 29, 2019) ("[T]he ALJ erred by relying on the state agency physicians' consultive opinions because evidence that became part of the record following those assessments could have changed the state agency doctors' medical opinions. It follows that this was not a harmless error.").

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes

11

the Commissioner that, on remand, special care should be taken to ensure that the ALJ's RFC assessment is supported by medical opinion evidence to the extent necessary and Plaintiff's subjective symptoms are properly evaluated.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 18] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order. In keeping with this Order, an updated medical expert review must be undertaken before the ALJ renders a new decision.

**SO ORDERED.**  **ENTERED:**

**DATE:   December 1, 2021**   _____
  **HON. MARIA VALDEZ**
  **United States Magistrate Judge**